UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PAUL EULETT,

          Plaintiff,

v.

LIEUTENANT SPIOTTA, CAPTAIN ZYDEL, LIEUTENANT GLINSKI, CAPTAIN VOHWINKEL, OFFICER LINDKE, LIEUTENANT SMITH, CAPTAIN TRIPPANY, BRENDA D. BAILEY, DEBORAH BISHOP, LIEUTENANT O'NEIL, DEPORTATION OFFICER GUNTHER, ASSISTANT FIELD OFFICE DIRECTOR TODD TRYON, Individually and in their official capacities,

          Defendants.

**DECISION AND ORDER**

6:14-cv-06191 EAW

---

## INTRODUCTION

Plaintiff Paul Anthony Eulett ("Plaintiff"), a detainee in the custody of Immigration and Customs Enforcement ("ICE"), commenced the instant action on April 21, 2014. (Dkt. 1). The operative pleading in this action is the Third Amended Complaint, which was filed on August 11, 2014. (Dkt. 10). In the Third Amended Complaint, Plaintiff alleges that while he was housed at the Buffalo Federal Detention Facility in Batavia, New York, a fellow detainee deliberately broke his leg. Plaintiff further claims that Defendants, who are employees of either the federal government or Valley Metro-Barbosa Group ("VMBG"), failed to prevent this incident, failed to provide him with appropriate medical care following this incident, and improperly transferred him to another facility in retaliation for his complaints about this incident. (*Id.*).

Two dispositive motions are currently pending before the Court. The first, a motion to dismiss, was filed on December 4, 2014, by Defendants Lieutenant Spiotta, Captain Zydel, Lieutenant Glinski, Captain Vohwinkel, Officer Lindke, Lieutenant Smith, Captain Trippany, and Lieutenant O'Neil (the "VMBG Defendants"). (Dkt. 16). The second, a motion to dismiss or, in the alternative, for summary judgment, was filed on December 19, 2014, by Defendants Brenda D. Bailey, Deborah Bishop, Deportation Officer Gunther, and Assistant Field Officer Todd Tryon (the "Federal Defendants"). (Dkt. 22). Plaintiff opposes these motions. For the reasons set forth below, both the VMBG Defendants' motion to dismiss (Dkt. 16) and the Federal Defendants' motion to dismiss (Dkt. 22) are granted.

## BACKGROUND

Plaintiff filed his Third Amended Complaint on August 11, 2014, alleging that on August 11, 2013, he was on a soccer field at the Buffalo Federal Detention Facility when another detainee intentionally and maliciously broke his leg. (Dkt. 10 at ¶ 17). According to Plaintiff, he informed Defendant Todd Tryon of the incident and Tryon told him that the matter had been referred to the local sheriff's department for investigation. (*Id.*). Plaintiff further claims that he was provided "ineffective medical care" for his broken leg and that he became disabled as a result. (*Id.* at ¶ 18).

In addition, Plaintiff alleges that on December 14, 2013, Defendant Officer Linde threw a pencil at Plaintiff and hit him in the leg. (*Id.* at ¶ 21). According to Plaintiff, he informed Defendants Lieutenant Smith and Lieutenant Spiotta about this incident and they took no action. (*Id.* at ¶ 22).

Plaintiff further claims that he was subsequently transferred "across the [c]ountry" and that Defendant Brenda Bailey was aware that Plaintiff was in no condition to travel yet did nothing to stop the transfer. (*Id.* at ¶ 28).

Plaintiff commenced this action on April 21, 2014. (Dkt. 1). Pursuant to various orders of the Court, Plaintiff filed an Amended Complaint on June 20, 2014 (Dkt. 5), a Second Amended Complaint on July 15, 2014 (Dkt. 8), and a Third Amended Complaint on August 11, 2014 (Dkt. 10). The VMBG Defendants filed their motion to dismiss on December 4, 2014. (Dkt. 16). Plaintiff filed a response to the VMBG Defendants' motion on December 16, 2014. (Dkt. 20). The VMBG Defendants filed a reply on January 16, 2015. (Dkt. 33).

The Federal Defendants filed their motion to dismiss or for summary judgment on December 19, 2014. (Dkt. 22). Plaintiff filed a response to the Federal Defendants' motion on March 2, 2015. (Dkt. 36). The Federal Defendants filed a reply on March 13, 2015. (Dkt. 40).

Plaintiff has also filed a motion for appointment of counsel. (Dkt. 32). The VMBG Defendants oppose this motion and filed a response on March 11, 2015. (Dkt. 39).

## DISCUSSION

### I. Legal Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). A court should consider the motion "'accepting all factual allegations in

the complaint and drawing all reasonable inferences in the plaintiff's favor.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (internal quotation marks omitted).

In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir. 2004) ("It is well-established that 'when [a] plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.'") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

## II. The VMBG Defendants' Motion to Dismiss

The VMBG Defendants argue in their motion to dismiss (Dkt. 16) that they are not subject to suit pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), because they are employees of a private entity and not agents of the Federal Government. Because Plaintiff's Third Amended Complaint is predicated solely on *Bivens*, they argue, all the claims against them must be dismissed.

"In *Bivens* . . . the Supreme Court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (citations and quotation omitted). The remedy identified in *Bivens* is "a judicially-created remedy stemming directly from the Constitution itself" and its purpose is "to deter individual federal officers from committing constitutional violations." *Id.* (quotation omitted).

In *Correctional Services Corporation v. Malesko*, 534 U.S. 61 (2001), the Supreme Court considered whether the implied damages action recognized in *Bivens* should be extended to allow recovery against a private corporation operating a halfway house under contract with the Bureau of Prisons. The Supreme Court concluded that it should not, explaining that federal prisoners housed in private facilities have access to tort remedies "unavailable to prisoners housed in Government facilities" and that *Bivens* applies only where other remedies are unavailable. *Id.* at 73.

In *Minneci v. Pollard*, 132 S. Ct. 167 (2012), the Supreme Court considered whether a *Bivens* action was available against employees of a privately operated federal prison in the context of an Eighth Amendment claim. *Id.* The Supreme Court held that "where, as here,

a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law. We cannot imply a *Bivens* remedy in such a case." *Id.* at 626.

The VMBG Defendants argue that "under the Court's reasoning in *Minneci*, the Valley Metro-Barbosa Defendants (private-sector employees working at a federal detention facility) are entitled to judgment as a matter of law on Plaintiff Eulett's *Bivens* action based on the Fourteenth, Eighth, and Fifth[1] Amendments." (Dkt. 16-1 at 8). With respect to Plaintiff's Eighth Amendment claims, these claims fall within the Supreme Court's holding in *Minneci* and are therefore not cognizable against the VMBG employees. *See Karboau v. Clark*, 577 F. App'x 678, 679 (9th Cir. 2014) ("The district court properly dismissed [immigration detainee's] Eighth Amendment claims against individual employees of the private entity running the federal detention center because [immigration detainee's] exclusive remedy for such claims is pursuant to state tort law.").

However, in addition to his Eighth Amendment claims, Plaintiff has also attempted to assert a due process claim pursuant to the Fifth and Fourteenth Amendments. (Dkt. 10 at ¶¶ 23-27). As the court explained in *La Ford v. Geo Grp., Inc.*, No. 13 CIV. 1978 (BMC),

---

[1] The Court notes that Plaintiff refers to the Fifth Amendment in his claim for cruel and unusual punishment. (Dkt. 10 at 6). It is, of course, the Eighth Amendment that prohibits cruel and unusual punishment. In accordance with the requirement that *pro se* submissions be read liberally, the Court construes Plaintiff's Third Amended Complaint as attempting to assert an Eighth Amendment cruel and unusual punishment claim.

- 6 -

2013 WL 2249253 (E.D.N.Y. May 22, 2013), "[a]lthough some courts have interpreted *Minneci* as barring all claims against employees of private prisons," the "better approach" is to "consider[] whether there are adequate state law remedies for a plaintiff's claims in determining whether *Minneci* precludes those claims." *Id.* at *3 (quotation omitted); *see also Espinoza v. Zenk*, No. 10-CV-427 MKB, 2013 WL 1232208, at *8 (E.D.N.Y. Mar. 27, 2013) ("The holding of *Minneci* only specifically bars Eighth Amendment claims. For non-Eighth Amendment *Bivens* claims against employees of private prisons, federal courts have declined to find them barred and decided them on the merits."). In other words, *Minneci* did not establish a categorical bar on non-Eighth Amendment claims against private employees working in federal detention facilities, and so the Court must consider Plaintiff's non-Eighth Amendment claims separately.

In this case, looking to the substance of Plaintiff's "due process" claim, he alleges that Defendants Captain Zydel, Lieutenant O'Neill, Chief Vohwinkel, Lieutenant Spiotta, and Lieutenant Glinski demonstrated deliberate indifference towards his health and safety and/or refused to provide him with grievance forms. (Dkt. 10 at ¶¶ 23-27). It therefore appears that Plaintiff is attempting to assert both a procedural due process claim based on the denial of grievance forms and a substantive due process claim based on the alleged indifference to his health and safety.

With respect to Plaintiff's substantive due process claim, this claim sounds in the same alleged physical harm that gives rise to his Eighth Amendment claims, and is thus not cognizable because state tort law provides an adequate remedy. *See Perez v. Pugh*, No.

4:12CV03068, 2013 WL 1855996, at *5 (N.D. Ohio Apr. 30, 2013) (dismissing substantive due process claim sounding in indifference to inmate's health).

The Court is also unable to conclude, based on the allegations in Plaintiff's complaint, that a *Bivens* remedy is available for the alleged failure to provide Plaintiff with grievance forms. *Bivens* applies only where a constitutional violation has been alleged. However, there is "no constitutional right of access to a grievance process." *Cipriani v. Schenectady Cty.*, No. 9:06-CV-0889(GTSDRH), 2009 WL 3111681, at *22 (N.D.N.Y. Sept. 24, 2009); *see also Shell v. Brzezniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim. Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a [constitutional claim].") (internal citations and quotations omitted); *cf. Baker v. Bannum Place of Saginaw, LLC*, No. 09-10360, 2012 WL 3930122 (E.D. Mich. Sept. 10, 2012) (a former federal prisoner could not bring a *Bivens* action against employees of a private corporation that ran a halfway house for violation of his due process rights). The Court therefore does not need to decide whether *Minneci* would extend to a properly pled procedural due process claim, because Plaintiff has failed to allege the violation of a cognizable due process interest.

For the foregoing reasons, the Court finds that Plaintiff has failed to state a cognizable *Bivens* claim against the VMBG Defendants. The VMBG Defendants' motion to dismiss (Dkt. 16) is granted.

### III. The Federal Defendants' Motion to Dismiss

The Federal Defendants have moved to dismiss the Third Amended Complaint or, in the alternative, for summary judgment on multiple grounds. First, Defendants Brenda Bailey and Deborah Bishop argue that they, as employees of the Public Health Service, are absolutely immune from suit under *Bivens* pursuant to 42 U.S.C. § 233(a). Second, the Federal Defendants argue that Plaintiff's official capacity claims must be dismissed on the basis of sovereign immunity. Third, Defendants Timothy Gunther and Todd Tryon argue that the allegations against them are conclusory and fail to allege their personal involvement in any constitutional violation. Fourth, the Federal Defendants argue that they are entitled to qualified immunity. The Court considers these arguments below.

#### A.   Absolute Immunity under 42 U.S.C. § 233(a)

Defendants Bailey and Bishop move for dismissal of the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(1), on the basis that they are absolutely immune from suit. A motion to dismiss under Rule 12(b)(1) is decided using the same standards as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003). However, unlike in the context of a Rule 12(b)(6) motion, "in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). Issues of absolute immunity are properly considered under Rule 12(b)(1). *See Robinson v. Jarris*, No. 1:07-CV-265, 2008 WL 3979260, at *5 (D. Vt. Aug. 25, 2008) ("Absolute

immunity would bar this Court's jurisdiction, resulting in dismissal under Fed. R. Civ. P. 12(b)(1).").

Defendants Bailey and Bishop are employees of the Public Health Service (the "PHS"). (Dkt. 25 at ¶¶ 3-4). 42 U.S.C. § 233(a) "grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). The sole remedy in such a case is a suit against the United States of America pursuant to the Federal Tort Claims Act. *Id.* The Supreme Court has held that § 233(a) expressly precludes a *Bivens* action against PHS employees. *Id.* at 808.

The Supreme Court's decision in *Hui* mandates the dismissal of Plaintiff's claims against Defendants Bailey and Bishop. Plaintiff has not offered any response to the argument that Bailey and Bishop are absolutely immune to his claims. The Federal Defendants' motion to dismiss the Third Amended Complaint is granted with respect to Bailey and Bishop.

B.  **Official Capacity Claims**

The Federal Defendants also seek dismissal of Plaintiff's claims against them in their official capacities, on the basis that the sovereign immunity of the United States bars any such claims. (Dkt. 27 at 10-12). The Court also considers this portion of the Federal Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(1).

"Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent. Because an action against a federal agency or federal

officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). *Bivens* actions against federal officers in their official capacities are barred by the doctrine of sovereign immunity. *Id.* Plaintiff's official capacity claims against the Federal Defendants are therefore dismissed.

### C. Personal Involvement in Constitutional Violations

Defendants Tryon and Gunther argue that Plaintiff has failed to adequately allege that they were personally involved in a violation of his constitutional rights, and that the claims against them must therefore be dismissed. (Dkt. 27 at 12-14).

"[A] plaintiff in a *Bivens* action is required to allege facts indicating that the defendants were personally involved in the claimed constitutional violation." *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009). The doctrine of *respondeat superior* does not apply in *Bivens* actions, and so a supervisory defendant is only subject to a *Bivens* claim if he "(1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating that unconstitutional acts were occurring." *Thomas v. Ashcroft*, 470 F.3d 491, 497 (2d Cir. 2006). The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) involved *Bivens* claims against supervisory officials. *Id.* at 676. There, the

Court made it clear that conclusory allegations are insufficient to render a claim against a supervisory official plausible. *Id.* at 680-81.

In this case, Plaintiff alleges that Defendant Gunther: (1) conspired with the "B.F.D.F. management team and the medical unit" to transfer Plaintiff to a facility in Alabama; and (2) failed to protect plaintiff from being attacked by another detainee. (Dkt. 10 at ¶¶ 26, 30). Plaintiff alleges that Defendant Tryon: (1) referred Plaintiff's complaint that he had been attacked by another detainee to the local sheriff's department; (2) "created a policy" that allowed "the wrong" against Plaintiff to occur; (3) failed to protect plaintiff from being attacked (i.e. having a pencil thrown at him) by an officer; and (4) retaliated against Plaintiff by having him transferred to Alabama. (*Id.* at ¶¶ 17, 22, 26).

The allegations against Defendants Gunther and Tryon are the kind of conclusory allegations that do not plausibly state a claim. With respect to the conspiracy allegations against Gunther, "conclusory or general allegations are insufficient to state a claim for conspiracy" to violate a plaintiff's civil rights.[2] *Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005); *see also Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (district court properly dismissed conspiracy claim against officers because plaintiff did not "state a

---

[2] The Court also notes that, as discussed below, Plaintiff has not alleged any facts plausibly supporting the inference that his transfer was retaliatory. *See Banks v. Mannoia*, 890 F. Supp. 95, 100 (N.D.N.Y. 1995) (dismissing claim of retaliatory transfer because it was stated in "wholly conclusory terms"); *see also Majid v. Malone*, No. 95 CIV. 2545 (HB), 1996 WL 134756, at *5 (S.D.N.Y. Mar. 26, 1996) (to state a claim for retaliatory transfer, a "complaint must set forth facts which would support the otherwise conclusory allegation that plaintiff's transfer. . . was undertaken in retaliation for the exercise of rights protected by the United States Constitution or the amendments thereto"). Plaintiff cannot maintain a conspiracy claim where he has failed to plausibly allege the underlying deprivation of a constitutional right. *See Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) ("A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right.").

factual basis for this conspiracy claim"); *Pollack v. Nash*, 58 F. Supp. 2d 294, 300 (S.D.N.Y. 1999) ("'[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed: diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'") (quoting *Dwares v. City of New York*, 985 F.2d 94, 99-100 (2d Cir. 1993)).

Indeed, the allegations against Gunther are similar to the allegations that the Supreme Court found failed to plausibly state a claim in *Iqbal*. There, the plaintiff had alleged that former Attorney General Ashcroft was the "principal architect" of a policy of discrimination on the basis of religion, race, and/or national origin. *Iqbal*, 556 U.S. at 681. The Supreme Court explained that it rejected these "bald allegations" not because they were "unrealistic or nonsensical" but because they were "too chimerical to be maintained." *Id*. Similarly, in *Twombly*, the Supreme Court explained that to state a conspiracy claim, a plaintiff must allege enough factual matter to suggest an agreement was reached and that "a naked assertion of conspiracy . . . without some further factual enhancement . . . stops short of the line between possibility and plausibility. . . ." 550 U.S. at 557.

With respect to Gunther and Tryon's alleged failure to protect Plaintiff from attacks by another detainee and an officer, Plaintiff has failed to allege any facts that support these claims. There is no indication in the complaint that either Gunther or Tryon was present at the alleged attacks, or that they created or endorsed any policy that would permit such attacks, or that they had any advance notice that these alleged attacks were going to occur, or that they were aware of facts from which the inference could be drawn that a risk of

serious harm to Plaintiff existed. *See Wilkins v. Poole*, 706 F. Supp. 2d 314, 318 (W.D.N.Y. 2010) (dismissing claims that supervisory prison officials failed to prevent an attack by another inmate because plaintiff made no specific factual allegations against the supervisory defendants); *see also Smith v. Goord*, No. 07-CV-6265-CJS, 2008 WL 365984, at *3 (W.D.N.Y. Feb. 11, 2008) (dismissing failure to protect claim based on nothing more than the assumption that supervisory officials should have been able to prevent attack).

Plaintiff's vague allegation that Tryon "created a policy" that allowed Plaintiff to be harmed also does not state a claim. Plaintiff does not even identify the alleged policy, nor does he allege any other facts to support this claim. *See Plair v. City of New York*, 789 F. Supp. 2d 459, 466 (S.D.N.Y. 2011) (conclusory allegations of the existence of a policy or custom "do not reach the requisite level of plausibility to survive" a motion to dismiss). Similarly, although Plaintiff alleges in conclusory fashion that Tryon had him transferred to Alabama in retaliation, there are no facts to support this allegation. Plaintiff has not plausibly alleged that Tryon was responsible for his transfer to Alabama, nor has he plausibly connected his transfer to any protected activity. *See Crenshaw v. Hartman*, 681 F. Supp. 2d 412, 416 (W.D.N.Y. 2010) ("To state a claim of retaliation, the inmate must allege more than his personal belief that he is the victim of retaliation. Conclusory allegations of retaliation are not sufficient; the plaintiff must [allege facts] from which retaliation may plausibly be inferred.") (quotation omitted and alteration in the original).

Finally, Plaintiff's allegation that Tryon referred the alleged attack by a fellow detainee to the local sheriff's department does not plausibly state a claim for a constitutional violation. A supervisory official who refers an inmate's complaint "to the appropriate staff

for investigation" cannot be said to have been personally involved in a constitutional violation. *Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009) (quotation omitted). Accepting as true Plaintiff's allegation that another detainee maliciously and deliberately broke his leg, this was a criminal matter, and Plaintiff has not offered any plausible reason why referring it to the local authorities for a criminal investigation was improper or violative Plaintiff's constitutional rights.

In sum, Plaintiff's Third Amended Complaint fails to plausibly state a claim against either Tryon or Gunther. As a result, the Federal Defendants' motion to dismiss the claims against these defendants is granted.

### D.  Qualified Immunity

The Federal Defendants also argue that they are entitled to qualified immunity. (Dkt. 27 at 14-22). The Court does not reach this argument because, for the reasons stated above, it has already determined that all of Plaintiff's claims are subject to dismissal.

### IV.  Plaintiff's Motion for Counsel

Plaintiff has asked the Court for appointed counsel. (Dkt. 32). Pursuant to *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986), in determining whether to appoint *pro bono* counsel in a civil case, the court must determine as a threshold issue that the plaintiff's position seems likely to be of substance. *Id.* at 61-62. Here, all of Plaintiff's claims are subject to dismissal, as set forth above. Plaintiff's motion for counsel is thus denied.

### CONCLUSION

For the reasons stated above, the VMBG Defendants' motion to dismiss (Dkt. 16) and the Federal Defendants' motion to dismiss (Dkt. 22) are granted. Plaintiff's motion for

appointment of counsel (Dkt. 32) is denied. The Clerk of the Court is directed to enter judgment in favor of Defendants and close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: December 23, 2015
       Rochester, New York